UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BECKY S. WARD

        Plaintiff,

v.                                **REPORT AND RECOMMENDATION**
                                          06-CV-0673 (NAM)

COMMISSIONER OF SOCIAL SECURITY

        Defendant,
_____

### I.    Introduction

Plaintiff Becky S. Ward brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision is not supported by substantial evidence and contrary to the applicable legal standards.[2]

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated April 2, 2009.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

1

## II. Background

Plaintiff protectively filed for DIB and SSI on September 9, 2004 (R. at 43).[3] These applications were denied on November 24, 2004 (R. at 25). Plaintiff alleged disability due to a severe back impairment. Plaintiff filed a timely request for a hearing on January 10, 2005 (R. at 32).

On June 3, 2005, Plaintiff appeared before the ALJ (R. at 341). The ALJ considered the case *de novo* and on October 19, 2005, issued a decision finding Plaintiff not disabled (R. at 17). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on March 24, 2006 (R. at 2-4). On May 31, 2006, Plaintiff filed this action.

Based on the entire record, the Court recommends affirming the decision of the Commissioner because the ALJ's findings are supported by substantial evidence.

## III. Discussion

### A. Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

---

[3] Citations to the underlying administrative record are designated as "R."

deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

### B. Analysis

#### 1. The ALJ's Decision

The ALJ followed the sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Act (R. at 17). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Id. At steps two and three, the ALJ found that Plaintiff had a severe back impairment, but it did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Id. At step four, the ALJ found that Plaintiff could perform the full range of light work. Id. Finally, the ALJ found that Plaintiff could perform her past relevant work as a convenience store clerk and inventory control specialist. Id.

### 2. Plaintiff's Claims

Plaintiff argues that the ALJ's decision is contrary to the applicable legal standards and not supported by substantial evidence. Specifically, Plaintiff argues that (a) the ALJ erred when evaluating the opinions of Plaintiff treating sources; and (b) the administrative law judge erred in determining Plaintiff has the residual functional capacity to return to her past relevant work.

#### a. The ALJ Did Not Commit Error in Evaluating Plaintiff's Treating Sources

Although Plaintiff asserts in her caption on "Point I" on page 10 of his supporting Memorandum of Law, that the ALJ improperly discounted the opinions of Plaintiff's "Treating Source Evidence" she fails to specifically argue the merits of this allegation or provide an analysis upon which the Court can evaluate.  Nevertheless, her position that her medical providers were treating sources is misplaced.

Plaintiff argues that because the ALJ did not grant Plaintiff's treating sources controlling weight, he was required to evaluate those sources based on the factors set forth in Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).[4] Plaintiff's Brief, pp. 10-4. Plaintiff argues that the ALJ's failure to apply these factors was error. Id. Specifically,

---

[4] "When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion." Schaal, 134 F.3d at 503 (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). These various factors include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Id. (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

Plaintiff refers to statements made by Dr. Fathallah, Dr. Zimba, Dr. Wahlig, and Nurse Practitioner Nancy Codd-Cook.[5] Id.

The Commissioner will give controlling weight to a "treating source's opinion on the issue(s) of the nature and severity of your impairment(s)" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999). However, not all health care providers are treating sources. According to the regulations, a treating source is Plaintiff's "own physician, psychologist, or other acceptable medical source who provides [Plaintiff], or has provided [Plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [Plaintiff]." 20 C.F.R. § 404.1502. The regulations specify that an ongoing treatment relationship is generally found where an acceptable medical source treats a claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." Id.; see, e.g., Shatraw v. Astrue, No. 7:04-CV-0510, 2008 WL 4517811, at * 11 (N.D.N.Y. Sept. 30, 2008) (finding four physicians were not treating sources because they each only treated the Plaintiff once and therefore did not develop an ongoing treatment relationship with the Plaintiff). Thus, an acceptable medical source who has treated or evaluated a claimant only a few times, or only after long intervals, may still be considered a treating source "if the nature and

---

[5] Ms. Codd-Cook has various degrees and certifications cited inconsistently throughout the record. For example, on August 27, 1999 she is referred to as F.N.P. (R. at 256). On December 11, 2003, she is referred to as CFNP PhD (R. at 155). As her status of Nurse Practitioner does not alter, the Court will refer to her as such. Also, although Ms. Codd-Cook has a Ph.D., there is no suggestion in the record that she is a psychologist and Plaintiff has not made such an argument.

frequency of the treatment or evaluation is typical for [the] condition(s)." 20 C.F.R. § 404.1502; see, e.g., Fernandez v. Apfel, No. 97-CV-4083, 1998 WL 812591, at *3-4 (E.D.N.Y. Apr. 20, 1998) (finding that a physician the Plaintiff saw six to eight times over the course of one and a half to two years was not a treating source because the Plaintiff did not see the physician with a frequency consistent with the severe mental impairment he claimed).

Based on these precedents and regulations, Plaintiff's assumption that her four medical providers qualify as treating sources is mistaken. The record does not support a finding that Dr. Fathallah, was Plaintiff's treating physician, and it certainly does not support a finding that Doctors Zimba, or Wahlig were her treating physicians. For example, the record does not support a finding that Plaintiff saw Drs. Fathallah, Zimba, or Wahlig on more than one occasion. Treatment notes show that Plaintiff met with Dr. Fathalla on August 13, 2003, at Bassett Healthcare (R. at 168). Plaintiff met with Dr. Wahlig on September 24, 2003, also at Bassett Healthcare (R. at 163-4). On August 27, 1999, Dr. Zimba wrote Nurse Practitioner Nancy Codd-Cook, a letter stating he had seen Plaintiff for a consultation (R. at 256).

The Court notes that Defendant concedes Dr. Fathallah was Plaintiff's treating physician, but argues that he rendered an opinion reserved for the Commissioner and that it was not at all an operative opinion. The Defendant's acceptance of Dr. Fathalla as a treating source is of no consequence. Even assuming, *arguendo*, that Dr. Fathallah was a treating physician, the Court agrees with Defendant that the ALJ properly considered and rejected the medical opinions in the record on two points: 1) if Dr. Fathalla's opinion that Plaintiff should not work is interpreted as an opinion that she

is disabled, it is not entitled to weight because an opinion that a person is disabled (or should not work) is within the sole discretion of the Commissioner, and 2) he was "merely advising Plaintiff not to work pending neurosurgical evaluation," which statement contained no evaluation of disability.  Defendant's Brief, pp. 10-11.  As to Dr. Wahlig, not only was Plaintiff's visit with him for "consultation," but he advised "conservative measures prior to considering surgery."

Moreover, Plaintiff testified during the hearing that Nurse Practitioner Codd-Cook, at Bassett Healthcare, was her primary source of treatment (R. at 347-8). Plaintiff also stated in a disability form that she was receiving medical treatment for her pain from Nurse Practitioner Codd-Cook (R. at 99).[6] Thus, the Court finds that these three physicians did not qualify as treating sources and as such did not merit controlling weight. See Logan v. Astrue, No. 07 Civ. 4150, 2008 WL 4145515, at *9 (S.D.N.Y. Sept. 8, 2008) (citing Mongeur v. Heckler, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983)) ("A doctor who examines a claimant once or twice is not a treating physician."); 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").  Plaintiff's primary source, Nurse Practitioner Codd-Cook, is deemed an "other source," and not an "acceptable medical source." 20 C.F.R. § 404.1513(d)(1), (a). As such, she is also not entitled to controlling weight. §§ 404.1527(d)(2), 404.1502.

---

[6] In a separate disability form, Plaintiff listed Nurse Codd-Cook, Dr. Marvel, and physician's assistant Gregory Frevele, as individuals that would have knowledge of her medical illness (R. at 55, 164). Plaintiff does not argue that the ALJ erred in regards to either Dr. Marvel or PA Frevele. Therefore, they will not be discussed.

In this case, the ALJ carefully considered the entire medical record in his decision. He noted Dr. Zimba's consultative suggestion that Plaintiff "consider the option of lumbar discograms and a possible diskectomy" [sic] (R. at 13). The ALJ also mentioned Plaintiff's September 2003 MRI, and as mentioned above, as well as Dr. Wahlig's opinion, based on the MRI, that Plaintiff "should exhaust all conservative measures of treatment prior to any consideration of surgery." Id. The ALJ also discussed Plaintiff's various visits with Nurse Practitioner Codd-Cook (R. at 13-15). Although the ALJ did not mention Dr. Fathallah's August 13, 2003 advice that Plaintiff not work until she received a neurosurgical evaluation, this was not error. As previously pointed out, medical source opinions concerning whether an individual can work is a decision reserved to the commissioner. 20 C.F.R. § 404.1527(e).

      **b.**    **The ALJ's Determination that Plaintiff has the Residual Functional Capacity to Return to her Past Relevant Work is Supported by Substantial Evidence**

Plaintiff argues that the ALJ erroneously found plaintiff has the residual functional capacity to return to her past relevant work, because 1) the ALJ substituted his own medical opinion for that of a qualified doctor and because 2) his opinion was not supported by substantial evidence. Plaintiff's Brief, pp. 14-17.

      **1.**    **The ALJ did not Substitute his Own Medical Opinion for that of a Qualified Doctor**

Plaintiff asserts that the ALJ has substituted his own medical opinion for that of a qualified doctor. The court finds that this claim is without merit and is simply a misstatement of the law. Plaintiff asserts that an RFC determination is a medical determination which must be made by a doctor, and not an ALJ. It is firmly established

9

and set forth in the regulations that the determination of the RFC is an issue reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(2) & 416.927(e)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.")  Id.  If the Plaintiff is arguing that by rejecting a medical opinion, such as that of Nurse practitioner Codd-Cook, Plaintiff's position is rejected because Codd-Cook is not a physician and is therefore not an acceptable medical source.  Moreover, he relied appropriately on Dr. Cusick by assigning appropriate weight to his opinion and evaluating the medical evidence supported by the record as discussed in the first section of the Court's opinion.

    The ALJ appropriately pointed to the significant number of household activities Plaintiff in which Plaintiff is capable of engaging and properly determined that she was capable of engaging in a wide array of daily activities and considered numerous additional factors involving an assessment of Plaintiff's credibility.  In this connection, the ALJ noted her lack of total credibility by recognizing Dr. Cusick's statement that Plaintiff was amplifying her symptoms in the straight-leg raising test in addition to a supine straight-leg raising test and her non-compliance and failure to follow through on numerous treatment modalities. [7]

---

[7] The Court notes that she had a poor record in following a course of treatment.  For example, the ALJ noted that Plaintiff's "attendance record for physical therapy was not exemplary.  In 1999, she went for a week.  In 2003, she was discharged because she failed to show upon on several occasions.  She was offered the possibility of surgery, but never followed through with it.  She was offered the use of a TENS unit, but declined.  Dr. Marvel recommended that she undergo another MRI in 2004, but she also refused to undergo another MRI. She was given the options of additional treatment, but in each instance, either declined or never followed up . . ." In order to receive benefits, there is a need on the part of a claimant to follow prescribed treatment "if this treatment can restore your ability to work." 20 C.F.R. § 404.1530(a)

### 2.  The ALJ's Determinations Regarding Postural Limitations and the DOT Listings

An individual's "residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). In order to determine a claimant's RFC, the ALJ must assess "all of the relevant medical and other evidence." § 404.1545(a)(3). Also, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work" "on a regular and continuing basis." §§ 404.1545(a)(4), (b). Regular and continuing basis is defined as "8 hours a day, for five days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1.

The ALJ found that Plaintiff was capable of performing the full range of light work (R. at 15). Specifically, the ALJ found that Plaintiff had the ability "to lift and carry 10 pounds frequently and 20 pounds occasionally and sit, stand, or walk for six hours out of an eight-hour workday." Id.

Dr. Cusick, a consultative physician for the SSA, examined Plaintiff on October 27, 2004 (R. at 213). Dr. Cusick diagnosed Plaintiff with "[b]ack pain due to degenerative arthritis and possibly disk [sic] disease with L4-L5 radiculopathy" (R. at 214). Dr. Cusick opined that: "I conclude that the claimant is capable of sitting, standing, walking, carrying, handling objects, hearing, speaking, and traveling. She has a moderate limitation for bending and lifting because of the back pain." Id.

On November 3, 2004, a disability analyst reviewed Plaintiff's medical record at the request of the SSA (R. at 217-22). The disability analyst found that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and had

an unlimited ability to push and/or pull, other than as shown for lift and/or carry (R. at 218). The analyst found that Plaintiff had postural impairments that would limit her ability to only occasionally climb, balance, stoop, kneel, crouch, and crawl (R. at 219). Finally, he determined that Plaintiff had no manipulative, visual, communicative, or environmental limitations (R. at 219-20).  Thus, both the consultative examiner and the disability analyst found Plaintiff had postural limitations, but did not discuss them specifically in the RFC.  However, this is not fatal to the ALJ's analysis, as "climbing, balancing, stooping, kneeling, crouching and crawling" are not typically activities of an inventory control clerk [specialist] under the DOT Listings.  <u>See:</u> Non-Exertional Postural Limitations, 20C.F.R. § 404.1569(a)(c)(vi).

Finally, the Court notes that the ALJ found that based on Plaintiff's RFC, she could perform "her past relevant work as an inventory control specialist [clerk] or as a convenience store clerk" (R. at 16). Although the work history report completed by Plaintiff listed her work requirements for convenience store clerk and inventory control specialist [clerk] as requiring standing and walking eight hours of the day for both positions (R. at 86-7), the ALJ was not obligated to accept her version of the job requirements.   Rather, the ALJ was correct in looking to the DOT Listings for the specific requirements of the listing.  As the Defendant has pointed out, "[a]n individual will be found not disabled if she can return to her past relevant work as she performed it or *as it is typically performed in the national economy*." 20 C.F.R. § 404.1560(b)(2), (emphasis supplied), Jasinski v. Barnhart, 341 F.3d 182, (2d Cir. 2003), citing Jock v. Harris, 651*.* According to the applicable listings, the ALJ correctly observed that the requirements require standing for only 6 hours, not 8 as the Plaintiff suggests.

## IV.   Conclusion

Based on the foregoing, and specifically finding that the ALJ findings are supported by substantial evidence, it is recommended that Defendant's motion for judgment on the pleadings be GRANTED, and Plaintiff's cross motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York

DATED:     May 27, 2009

### ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

    Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

*[signature]*

Victor E. Bianchini
United States Magistrate Judge

    Syracuse, New York

DATED:    May 27, 2009